O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEGAN M. B.,<br>Plaintiff,<br>v.<br>FRANK BISIGNANO, Commissioner of Social Security,<br>Defendant. | Case No. 5:26-cv-03004-KES<br><br>MEMORANDUM OPINION AND ORDER |

**I.**

**INTRODUCTION**

On June 2026, Megan M. B. ("Plaintiff") filed a Complaint for review of denial of Social Security disability benefits. (Dkt. 1.) Commissioner Frank Bisignano ("Defendant") timely filed an Answer and provided a certified copy of the Administrative Record pursuant to Rule 4(b) of the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g). (Dkt. 10.)

On September 8, 2026, Plaintiff filed a Plaintiff's Brief under Rule 6. ("PB" at Dkt. 11.) Defendant filed a Commissioner's Brief under Rule 7. ("CB" at Dkt.

15.) On November 3, 2026, Plaintiff replied.[1] (Dkt. 16.) The parties have consented to proceed before the assigned Magistrate Judge for all purposes. (Dkt. 7, 8, 9.)

## II.

## BACKGROUND

### A. Plaintiff's First District Court Appeal.

In May 2020, Plaintiff filed an application for disability insurance benefits ("DIB") alleging she became unable to work because of her disabling condition on May 6, 2019, at age 27. Administrative Record ("AR") 170. On May 19, 2021, Administrative Law Judge ("ALJ") JoErin O'Leary conducted a hearing. AR 60-91. ALJ O'Leary published an unfavorable decision on July 15, 2021. AR 42-59. After considering the functional limitations caused by Plaintiff's medically determinable impairments ("MDIs"), the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light, simple work with some additional restrictions. AR 50.

After the Appeals Council denied review, Plaintiff appealed to the district court for the Central District of California. See Megan M. B. v. Saul, case no. 5:22-cv-02096-RSWL-MRW. The parties stipulated to a remand. AR 1044.

### B. Plaintiff's Second District Court Appeal.

Upon remand, a new ALJ, Amy Chau, conducted a hearing on January 19, 2024. AR 990-1016. On August 12, 2024, ALJ Chau published another unfavorable decision. AR 969-989. After considering the functional limitations caused by Plaintiff's MDIs, ALJ Chau limited Plaintiff to light work with

[1] Plaintiff's Reply (Dkt. 16) appeared to copy her Opening Brief. The Court asked Plaintiff's counsel to file either a corrected Reply or a redline version so that the Court could more easily identify new text. (Dkt. 17.) On November 13, Plaintiff filed a redline (Dkt. 18) showing a few new paragraphs. It would assist the Court to receive a reply that responds to Defendant's arguments rather than repeating the Opening Brief.

additional environmental and postural, but with no restriction to "simple" work. AR 977.

Plaintiff again appealed to the district court. See Megan M. B. v. Saul, case no. 5:24-cv-02186-KES. Again, the parties stipulated to a remand. AR 1718.

**C. Plaintiff's Instant District Court Appeal.**

After the second remand, the case went back to ALJ Chau who conducted a third hearing on February 13, 2026. AR 1681-96. On March 20, 2026, the ALJ issued an unfavorable decision. AR 1651-80. Following the five-step sequential evaluation process, at step one, the ALJ found that although Plaintiff worked after her alleged onset date, that work did not constitute substantial gainful activity ("SAG"). AR 1657. The ALJ also determined that Plaintiff's last date insured ("LDI") was December 31, 2024. AR 1657.

At step two, the ALJ found that Plaintiff had the following severe MDIs: "left hip dysplasia, status post arthroscopic repair; fibromyalgia; history of neoplasm of pineal gland, status post placement of ventriculoperitoneal shunt[2] valve; major depressive disorder, panic disorder, and generalized anxiety disorder." AR 1657. As relevant to Plaintiff's arguments, the ALJ did not find that migraine headaches were one of Plaintiff's MDIs.

At step three, the ALJ found that none of Plaintiff's MDIs met or medically equaled a listed impairment. AR 1657-60.

At step four, the ALJ made RFC findings. The ALJ found that Plaintiff could do light work with additional limitations on walking, sitting, and postural activities. AR 1660. This time, ALJ Chau limited Plaintiff to simple work involving only occasional interactions with supervisors and coworkers and no interactions with the public. AR 1660. The ALJ also found that Plaintiff had no

[2] The ALJ described this as "treatment for a brain tumor with a ventricular shunt." AR 67. The benign mass was surgically removed when Plaintiff was age 12. AR 1465. The shunt was modified by another surgery in July 2021. AR 1268.

past relevant work.[3] AR 1671.

At step five, based on the RFC findings, testimony from a vocational expert ("VE"), and other evidence, the ALJ found that Plaintiff could work as a general office clerk, file clerk, shipping and inventory clerk, and sewing machine operator. AR 1671-72. The ALJ concluded that Plaintiff was not disabled "at any time from May 6, 2019, the alleged onset date, through December 31, 2024, the date last insured." AR 1673.

## III.

## STANDARD OF REVIEW

Federal district courts review administrative decisions denying disability benefits under 42 U.S.C. § 405(g). District courts can reverse an administrative decision only if the ALJ made an error of law or made factual findings without substantial evidentiary support. Shaibi v. Berryhill, 883 F.3d 1102, 1106 (9th Cir. 2018). "Substantial" means "more than a mere scintilla" but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. 2017).

## IV.

## ISSUES PRESENTED

Issue One: Whether the ALJ failed to give clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's subjective symptom testimony. (PB at 6-13.)

Issue Two: Whether the ALJ erred in evaluating medical opinion evidence from (1) surgeon Mark Calayag, M.D.; and (2) neurologist Sonja Barbara Potrebic, M.D., Ph.D. (PB at 14-19.)

Issue Three: Whether the ALJ (1) erred at step two by not identifying migraines as a severe MDI; (2) erred at step three by not considering the right

---

[3] In 2019, Plaintiff worked at Tutor Time, but she did not work fulltime. AR 1689. She worked about five days every two weeks. AR 196.

Listings; or (3) erred at step four by not accounting for the functional limitations caused by migraines. (PB at 17-18.)

## V.

## DISCUSSION

### A. Issue One: Plaintiff's Subjective Symptom Testimony.

#### 1. Legal Standard.

The ALJ engages in a two-step analysis to evaluate a claimant's subjective symptom testimony. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036. If so, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only by making specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010); Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014). Unless an ALJ finds that a claimant is malingering or has failed to provide objective medical evidence in support of his or her testimony, an ALJ must provide clear and convincing reasons for rejecting a claimant's subjective testimony about the severity of experienced symptoms. Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015). While an ALJ's findings must be properly supported and sufficiently specific to assure a reviewing court that the ALJ did not "arbitrarily discredit" a claimant's subjective statements, an ALJ is not "required to believe every allegation" of disability. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

#### 2. Summary of Relevant Administrative Proceedings.

ALJ summarized Plaintiff's hearing testimony. AR 1661-62. The ALJ

noted her testimony that she experiences "head pressure, nausea, constipation, weakness, numbness, tingling, and sensations of pins and needles in her extremities." AR 1661. She also "described fatigue and difficulty being upright, sitting, standing, or walking." AR 1662. "[S]he spends approximately ninety-five percent of her time in bed to relieve head pressure and nausea." AR 1662.

Indeed, Plaintiff testified that after having left hip surgery in September 2020, she returned to her part-time work at Tutor Time and worked from January to April 2021. AR 68, 1685-86. By the date of the first hearing (May 2021), her hip was "a lot better than it was" but "still painful" with exertion. AR 69-70. She had pain, numbness, and tingling everywhere throughout her body which was attributed to fibromyalgia. AR 70. She described herself as "nauseated 24/7." AR 71. At most, she could stand and walk for 30 minutes. AR 73. She testified, "I'm mostly in bed pretty much all the time because it's just that bad." AR 76.

By the second hearing (January 2024), she testified that she did not "go anywhere other than to go see the doctor." AR 1003. When she went to a medical appointment, she would "basically make a bed out of the back of [her father's] truck because [she did] best lying flat." AR 1003. She spent the day "mostly just lying flat back in bed … that's pretty much it. … I don't go anywhere. … I don't really have any daily activities." AR 1003. She also reported "multiple instances" when her "entire leg has gone numb" and she "wasn't able to walk." AR 1004.

Her description of her functional impairment was about the same at the third hearing (February 2026), as follows:

> My day is pretty much spent in bed, about 95% of the time. That's the best relief I can get from the head pressure and the nausea. And that's pretty much all that I do. I don't really do anything else, because I'm unable to, due to the pain and the head pressure and nausea.

AR 1688. She could not work even "a few days a week" because she was "unable

to be upright, whether on [her] feet or sitting, for more than 30 minutes at a time." AR 1688-89.

The ALJ found that while Plaintiff's MDIs "could reasonably be expected to cause the alleged symptoms" such as pain, headache, and nausea, her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 1662. As reasons, the ALJ found Plaintiff's testimony "inconsistent with the objective medical evidence." AR 1662. The ALJ found that Plaintiff had exaggerated the "duration and frequency" of some symptoms after experiencing medical improvement. AR 1662-63. The ALJ also found Plaintiff's testimony inconsistent with her reported activities. AR 1663.

**3. Analysis of Claimed Error.**

**4. <u>Reason One</u>: Inconsistency with Activities.**

The ALJ wrote, "[Plaintiff] testified that she was essentially bedridden for 95 percent of the day. However, in December 2023, she "reported no concerns regarding activities of daily living ([AR 1332]). Additionally, as noted above, "[Plaintiff] indicated that she worked part-time as a tutor after the alleged onset date. Other records reflect that "[Plaintiff] spent time with family and attended a baby shower ([AR 1285])." AR 1663. Thus, the ALJ identified three inconsistencies: (1) working at Tutor Time; (2) denying difficulties with her activities of daily living; and (3) attending a baby shower.

- <u>Work at Tutor Time</u>.

From January to April 2021, she worked "a couple days a week" at Tutor Time, earning about $5,550 in a four-month period. AR 68, 1657, 1877-78. Her boss was "threatening [her] job," so she came back to work "earlier than [she] should have" after her 2020 hip surgery. AR 996. She was placed on "modified duties" because she "couldn't get on the floor, bend, and do things with the kids" like a teacher was supposed to do. AR 996. She "sat at the front" and assisted

other teachers when they needed help. AR 997. Eventually, she resigned. AR 997. When asked why she could no longer work at Tutor Time, she testified:

> There were a lot of children that they allowed to come in that were disabled and different things like that. So when I went in, the issue that I had was that I was being attacked by the kids as well as coworkers … verbally with the coworkers, and then that played into my anxiety, my stress. And then me physically being sick I was unable to do the things that I needed to do to adequately care for the kids as well.

AR 81.

Plaintiff contends that the ALJ failed to explain how working part-time as a tutor was inconsistent with her testimony. (PB at 10, 12.) But the ALJ highlighted Plaintiff's repeated testimony that she could not sit or stand for more than 30 minutes a day, a degree of functional limitation that is inconsistent with working even part-time.

In her reply, Plaintiff suggests that she was unable to continue working at Tutor Time because she missed too much work. (Dkt. 18 at 14 (redline new paragraph).) But that was always a part-time job, and she testified that she resigned. AR 997.

- Daily Activities.

Per a December 2023 progress note from Riverside Medical Center, Plaintiff was brought to the emergency room ("ER") by ambulance after her father called emergency services in response to a panic attack. AR 1327. Per the ambulance staff, Plaintiff reported that she quit THC "cold turkey 3 weeks ago" after using it "the past 6 months."[4] AR 1327. Plaintiff was "very frustrated" by her medical situation because she was "not able to work or engage in routine life activities due to escalating symptoms." AR 1327. At the time, she was negative for myalgias

[4] In August 2023, a doctor told her that THC treated nausea. AR 1353-54.

and headaches but positive for constipation and nausea. AR 1330. She was treated with anti-anxiety medication and discharged. AR 1331. Despite Plaintiff's statements above, other records from this ER visit say that Plaintiff reported no functional limitations and no ALD concerns. AR 1333. Her father, who accompanied her to the ER, reported that she was "able to complete all ADLs, albeit slower and with difficulty." AR 1332.

Plaintiff again contends that the ALJ failed to explain how this is inconsistent with her testimony. (PB at 13.) The ALJ did not err by concluding that if Plaintiff really could not spend more than 30 minutes per day upright, that would interfere with her basic activities of daily living such as bathing, dressing, eating, toileting, etc., and both Plaintiff and her father (with whom she lived) would have answered the medical staff's questions differently.

- The Baby Shower.

In notes from a March 2024 video appointment with a Kaiser therapist to address anxiety, the therapist wrote that Plaintiff had made "good progress" on her goals. AR 1285. Plaintiff reported that she had "Increased socialization by spending more time with family" and "attended a baby shower." AR 1285. The therapist encouraged her to "explore interests, classes." AR 1286. She was "working with her therapist to get out of her house more although this is a challenge as the longer she stays upright she starts experiencing other symptoms …." AR 1287.

Again, Plaintiff contends that "it is unclear how this demonstrates an inconsistency." (PB at 13.) Spending time with family was not inconsistent with Plaintiff's testimony, because Plaintiff lives with her parents and could spend time with them while lying down. AR 1293. But Plaintiff repeatedly testified that she did not leave the house except for doctor's appointments. The ALJ could reasonably find that testimony inconsistent with attending a baby shower.

**5. <u>Reason Two</u>: Lack of Objective Support.**

Plaintiff's briefing is not entirely clear, but she seems to argue that the ALJ erred by discounting her testimony about mental limitations as inconsistent with "several normal mental health findings." (PB at 9, citing AR 1662; PB 11 citing AR 1665-66.) The ALJ wrote:

> [Plaintiff's] statements regarding the alleged intensity, persistence, and limiting effects of major depressive disorder, panic disorder, and generalized anxiety disorder symptoms are inconsistent with the objective medical evidence (SSR 16-3p). [She] alleged that mental health symptoms reduced her ability to perform work-related activities. However, the alleged intensity, persistence, and limiting effects of these symptoms are not supported by the evidence ….

AR 1662. The ALJ contrasted Plaintiff's allegations with the objective evidence. The ALJ noted that Plaintiff "suggested difficulty with focus and concentration." AR 1658 (referring to testimony at AR 1687). The ALJ then listed numerous medical records finding that Plaintiff had intact memory, normal concentration, unimpaired judgment, alertness, no confusion, normal affect, etc. AR 1658. The ALJ further noted that on December 19, 2024, "she denied depression or anxiety ([AR 2753])." AR 1658. The ALJ adequately explained why the objective evidence does not support functional limitations linked to depression and anxiety.

Next, Plaintiff argues that the inconsistency between Plaintiff's allegations of difficulty walking and "other evidence including denying ambulation difficulties and normal gait" is not a second reason, but just the same reason, i.e., inconsistency with the objective evidence. (PB at 10.) While this may be true, it does not help Plaintiff because she does not (1) show error in the ALJ's finding of inconsistency between the cited objective evidence and her testimony about difficulty walking; and (2) the ALJ gave at least one other valid reason for discounting her testimony, i.e., inconsistency with activities, as discussed above.

Finally, Plaintiff argues, "Essentially, the ALJ rejected [her] allegations based upon a lack of objective support. Based upon migraines, this is not sufficient." (PB at 11.) Plaintiff appears to be arguing that there are no objective medical tests that can confirm a diagnosis of migraines, so the ALJ could not rely on the lack of objective support as a reason to discredit Plaintiff's testimony. But the gravamen of Plaintiff's medical history is that while she has complained for years of head pain and pressure so severe that she spends nearly all her time lying down, multiple MRIs, physical examinations, lab tests, and specialist consultations have not found a cause. In December 2024, Cedars Sinai summarized her history of headaches noting that "her headaches and nausea improved until 2020." AR 2752. After that, her doctors considered but ruled out regrowth of her childhood brain tumor (because imaging showed it had not grown), shunt over-draining (because adjusting the shunt valve to "virtually off" had little effect), and a cerebrospinal fluid ("CSF") leak (because CT myelography testing was negative). AR 2752-53. Plaintiff received an implanted intracranial pressure ("ICP") monitor, but that monitoring was "not revealing." AR 2639, 2871; see also AR 2122 (noting that in May 2024, her "intracranial pressure readings have varied from negative to normal across different assessments"). She tried "10 prophylactic headache medications" but reported that they all were "ineffective" at relieving her subjective symptoms. AR 2122.

This is exactly the kind of scenario for which substantial evidence supports finding that the objective evidence does not support the level of claimed functional impairment. The ALJ described the MRIs and other medical testing that failed to show a cause for Plaintiff's extreme symptoms. AR 1665, 1668. The ALJ also noted that sometimes Plaintiff was negative for headaches and myalgias. AR 1665 (citing AR 1330 (12/22/23: "negative for back pain and myalgias")); AR 1668 (citing AR 2127 (5/13/24: "no nausea" and "no muscle, back pain, joint pain or stiffness")); AR 2123 (4/30/23: "no headaches"). The ALJ found persuasive the

opinions of three doctors who reviewed Plaintiff's medical history and opined that she could sustain light work. AR 1667-68. Plaintiff has not demonstrated error in the ALJ's reliance on the lack of objective support as one of several reasons to discount her subjective testimony about the limiting effects of her headaches.

**B. Issue One: The Medical Opinion Evidence.**

**1. Legal Standard.**

ALJs must evaluate medical opinions and prior administrative findings by assessing their "persuasiveness." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). An ALJ's determination of the persuasiveness of medical opinions is based on a list of factors including "supportability," "consistency," "relationship with the claimant," "specialization," and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). Of these factors, the two most important are "supportability" and "consistency." Id. §§ 404.1520c(b)(2), 416.920c(b)(2). The more a medical source presents support from the available, objective medical evidence and the more consistent a medical opinion is "with the evidence from other medical sources and nonmedical sources," the more weight an ALJ will give that opinion. Id. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). ALJs must explain how they considered supportability and consistency. Id. §§ 404.1520c(b)(2), 416.920c(b)(2). Ultimately, the ALJ's decision to discount or reject medical opinion evidence must be supported by substantial evidence. Woods v. Kijakazi, 32 F.4th 785, 787 (9th Cir. 2022).

**2. Summary of Relevant Administrative Proceedings.**

On initial review, Plaintiff's only severe MDIs were joint dysfunction and fibromyalgia. AR 95. In May 2020, State agency consultant C. Scott, M.D., opined that Plaintiff could do light work with some additional limitations. AR 97-98. On reconsideration in July 2020, R. Dwyer, M.D., agreed with Dr. Scott's RFC opinions. AR 107-08. In June 2021, medical expert ("ME") Minh Vu-Dinh, M.D., answered interrogatories. Dr. Vu-Dinh opined that Plaintiff could do light

work with some additional restrictions. AR 936.

Treating neurosurgeon Dr. Calayag wrote an undated one-page letter. AR 1223. Dr. Calayag described two brain surgeries that he performed in July 2021 to modify or adjust Plaintiff's shunt to try to address her complaints of headaches and nausea. By September 2021, he observed that she had "some improvement of her symptoms however they continued to persist." AR 1223. He opined that she was "unable to maintain a position that would not elicit one symptom or another for a reasonable length of time." AR 1223. In other words, she experienced "nausea when upright and pressure headache issues when laying flat."[5] AR 1248. Dr. Calayag opined that these symptoms "can be so severe that she must take off work for several days at a time." AR 1223. He concluded that she could not sustain fulltime employment. AR 1223.

In January 2026, Dr. Potrebic completed a "Migraine Questionnaire." AR 2749-51. Dr. Potrebic first started treating Plaintiff in October 2025. AR 2749. When asked to identify the "clinical findings, laboratory analysis, and test results" that showed Plaintiff's MDIs, she responded, "None as migraine" but "has shunt and followed by serial MRIs." AR 2749. She left blank the question asking if Plaintiff is a malingerer. AR 2750. When asked if Plaintiff would need to take unscheduled breaks, she wrote, "Not appropriate for migraine which is daily." AR 2751. She also wrote, "She can only be upright for 30-60 minutes before lying down." AR 2751. She estimated that Plaintiff would miss work "much more" than three times a month. AR 2751. She estimated that Plaintiff's headache-

[5] The medical records are not consistent about which position improved her headaches. AR 1262 (her headaches were "worse when upright and OK with laying flat"); AR 1339, 2123 (head pressure "worse when lying flat"); AR 1459 ("Lying flat helps with nausea and dizziness but makes her headache worse); AR 1616 ("Pressure headaches improves with standing"); AR 2122 ("head pressure … worsening the longer they remain in a sitting or standing position").

related functional limitations had existed since 2019, but when asked to support that, she wrote, "I cannot really determine -> but she has good 10 years after 2009 shunt revision -> bg. her history and other [illegible]." AR 275.

The ALJ found the opinions of Drs. Vu-Dinh, Scott, and Dwyer persuasive because they were based on "an extensive review of the medical evidence" with "references to specific findings in the record, and well-supported explanations." AR 1668. They were also consistent with "multiple objective findings" such as findings of normal gait and normal motor function with no weakness, as well as multiple medical appointments when Plaintiff denied join pain and myalgias. AR 1668. The ALJ ultimately adopted a more restrictive RFC than these doctors suggested in consideration of Plaintiff's complaints about "hip pain, fibromyalgia, nausea, and headaches." AR 1669.

The ALJ found that the opinions of Drs. Calayag and Potrebic as to how much work Plaintiff would miss because she could only be upright for 30-60 minutes each day were "not persuasive because the assessments are not supported by relevant objective medical evidence, are inconsistent with evidence from other medical and nonmedical sources, and are contradicted by other factors." AR 1669.

**3. Analysis of Claimed Error.**

**a. Dr. Calayag.**

The ALJ found Dr. Calayag's opinions unpersuasive due to a lack of supportability and consistency. As to supportability, he did not provide references to "objective clinical or diagnostic findings" as to why Plaintiff needed to spend most of the day lying down, and as discussed above, the ALJ found that the objective medical evidence did not support that allegation. AR 1669. The ALJ cited much of the same medical evidence showing unimpaired mental status, steady gait, full muscle strength, and the lack of an objective explanation for Plaintiff's symptoms as the ALJ cited in discounting Plaintiff's testimony. The ALJ also cited the same evidence about Plaintiff working part-time in 2021 and

telling the ER staff in that she had no concerns about activities of daily living. AR 1669.

As to consistency, the ALJ noted that his opinions were inconsistent with those of Drs. Vu-Dinh, Scott, and Dwyer. AR 1669. Plaintiff contends that the ALJ was required to "address the consistency of these opinions concerning the absentee limitation" but did not. (PB at 15.) To the contrary, Drs. Vu-Dinh, Scott, and Dwyer all considered an 8-hour workday and found that Plaintiff could sustain fulltime employment if limited to light work. AR 96, 106, 936.

As to supportability, Plaintiff argues that Dr. Calayag's narrative statement provided clinical support for his opinions. (PB at 11.) But as the basis of his relevant opinion (i.e., that her symptoms would cause her to miss too much work to maintain any employment), he just recited Plaintiff's subjective reports that she cannot be in an upright position for more than about 30 minutes without experiencing severe head pressure/pain or nausea. Like Plaintiff's other doctors, Dr. Calayag had no clinical explanation for the extremity of her reported symptoms and resulting functional limitations.

In sum, Plaintiff has not shown that the ALJ erred by discounting Dr. Calayag's opinion that Plaintiff's subjective symptoms would cause her to miss too much work to maintain employment.

**b. Dr. Potrebic.**

The ALJ relied on the same reasons to discount Dr. Potrebic's opinions. AR 1669-70. In addition to lacking supportability and consistency, the ALJ noted that Dr. Potrebic "did not begin treating [Plaintiff] until October 2025, which is after the date last insured." AR 1669.

Plaintiff argues that the ALJ should not have relied on the lack of objective evidence because objective evidence never exists to support a diagnosis of migraines. Regardless of the strength of this argument, the ALJ was justified in discounting opinions from a medical source who did not being to treat Plaintiff

until nearly a year after her LDI. See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (holding that an ALJ can reject the opinion of a physician who did not examine the claimant until more than a year after her LDI); DeBerry v. Comm'r, 352 Fed. Appx. 173, 176-77 (9th Cir. 2009) (affirming the rejection of a doctor's opinion where the doctor had no personal knowledge of the claimant's condition during the relevant period).

**C. Issue Three: Error in Considering Plaintiff's Headaches.**

**1. Alleged Step Two Error.**

At step two, the ALJ must determine the claimant's MDIs and assess whether each is severe. 20 C.F.R. § 404.1520(a)(4)(ii). However, because "[s]tep two is merely a threshold determination[,] ... [i]t is not meant to identify the impairments that should be taken into account when determining the RFC." Buck v. Berryhill, 869 F.3d 1040, 1048-49 (9th Cir. 2017). Thus, errors at step two are generally harmless if the ALJ proceeds to step three, because in determining the claimant's RFC, the ALJ must consider the functional limitations caused by all of the claimant's impairments, whether severe or not. Id. at 1049 ("in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'") (citation omitted); see Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006) ("any error [the] ALJ committed at step two was harmless because the step was resolved in claimant's favor"); Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) ("Even assuming that the ALJ erred in neglecting to list the bursitis at Step 2, any error was harmless.").

Plaintiff contends that the ALJ failed to identify "migraines as a severe impairment." (PB at 17.) But since the ALJ continued the sequential evaluation process past step two, any error assessing the severity of Plaintiff's head pain/pressure is harmless unless Plaintiff can demonstrate that the ALJ's RFC findings lack substantial evidentiary support (which is considered below).

**2. Alleged Step Three Error.**

At step three of the disability analysis, ALJs consider whether a claimant's impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). The Listings are divided into categories of impairments that relate to various "body systems" (e.g., musculoskeletal system, respiratory system, etc.). 20 C.F.R. § 404.1525(a). The impairments described within each category are those that the Social Security Administration considers severe enough to prevent a person from doing any gainful activity, regardless of his or her age, education, or work experience. Id. If a claimant's "impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." Bowen v. Yuckert, 482 U.S. 137, 141 (1987).

Plaintiff contends that the ALJ erred by not addressing Listings 11.02B and 11.02D, the Listings for "dyscognitive seizures" that are "most closely analogous" to migraines. (PB at 18.) But Plaintiff does not state what Listings 11.02B or 11.02D require and then brief how the medical evidence shows that Plaintiff meets those requirements. Because Plaintiff did not brief this issue, she has waived it and failed to show prejudicial error. See Alvernaz v. Berryhill, 2018 U.S. Dist. LEXIS 40203, 2018 WL 125660, at *6 (E.D. Cal. Mar. 12, 2018) (finding waiver in a social security disability benefits case where a claimant failed to sufficiently address a claim in her opening brief to the district court); Singh v. Ashcroft, 361 F.3d 1152, 1157 (9th Cir. 2004) (finding waiver where the petitioner failed to express "what he considers to be the factual and/or legal inadequacies of the IJ's challenged decision"); Phuong Doan v. Astrue, 464 F. App'x 643, 645 (9th Cir. 2011) ("[A]rguments 'not coherently developed' in appellate briefs are waived on appeal.") (citation omitted).

**3. Alleged Step Four Error.**

The ALJ recognized Plaintiff's history of brain surgery and shut placement

when listing her MDIs. AR 1657. The ALJ acknowledged that Plaintiff complained of head pain and pressure (AR 1661-62) and received treatment for headaches (AR 1664-65) but discounted Plaintiff's testimony that these symptoms were so extreme that she could not be upright for more than 30 minutes per day (AR 1662).

Plaintiff argues that the "ALJ fails to consider the opinion of Dr. Potrebic who found migraines sufficient to cause absenteeism from work. (AR 2749-2751). This further shows that that ALJ failed to properly consider migraines." (PB at 11.) As discussed above, the ALJ gave legally sufficient reasons, supported by substantial evidence, for rejecting Dr. Potrebic's post-LDI opinions about Plaintiff's likely rate of absenteeism. Regardless of whether Plaintiff's head pain and pressure was attributed to migraines or some other MDI, the ALJ accounted for that symptom when making RFC findings. The ALJ adopted RFC findings more restrictive than Drs. Scott and Dwyer specifically "to account for [Plaintiff's] fibromyalgia pain and complaints of headaches and nausea …." AR 1668. This included "noise limitations;" the ALJ limited Plaintiff to a work environment with only a "moderate noise level" to avoid triggering headaches. AR 1660, 1669.

## VI.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that Judgment shall be entered AFFIRMING the Commissioner's decision denying benefits.

DATED: November 19, 2026

Karen E. Scott

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE